ANNA MARIE DOYLE,[1]

                          Plaintiff,

-vs-

CITY OF CORNING, JOHNATHAN D. MCDIVITT, and PEN-ROSE J. DYRING,

                          Defendants.

DECISION AND ORDER

14-CV-6507-CJS-MWP

## APPEARANCES

For Plaintiff:                          Anna C. Czarples, Esq.
Jacob P. Welch, Esq.
Law Office of Jacob P. Welch
8 Denison Parkway East, Suite 203
Corning, NY 14830
(607) 936-8057

For Defendant:                       Andrew Dylan, Esq.
Florina Altshiler, Esq.
Michael P. McClaren, Esq.
Webster Szanyi, LLP
1400 Liberty Building
Buffalo, NY 14202
(716) 842-2800

## INTRODUCTION

**Siragusa, J.** Before the Court is Defendants' Notice of Motion, filed on July 20, 2018,

ECF No. 82, seeking summary judgment. Plaintiff has responded,[2][3] and the Court heard oral

---

[1] The Clerk's docket shows the plaintiff's given name as "Anne," whereas, the plaintiff's affidavit, filed in opposition to the pending motion, shows that it is spelled "Anna."

[2] The Clerk's docket shows that defendant Johnathan D. McDivitt is spelled as "Johnathan", whereas, the defendant's affidavit, filed in further support of the pending motion, shows that it is spelled "Jonathan." The Clerk is directed to correct the caption of this case to reflect the correct spelling of defendant Jonathan D. McDivitt.

[3] Filings in this Court are to comply with L.R. Civ. P. 5.1, which provides in pertinent part that, "[t]he procedures for electronic filing . . . are set forth in the CM/ECF Administrative Procedures Guide," and "[a]ll pleadings and other papers shall be filed and served in accordance with" the Federal Rules and the Administrative Procedures Guide. The Administrative Procedures Guide states that, "A

argument on January 7, 2019. For the reasons stated below, the Court grants in part, and denies in part, Defendants' application.

## BACKGROUND

Plaintiff Anna Marie Doyle ("Doyle") filed an amended complaint by leave of this Court. The amended complaint asserts the following causes of action:

(I) Malicious prosecution pursuant to 42 U.S.C. § 1983;

(II) False arrest pursuant to 42 U.S.C. § 1983;[4]

(III) A *Monell* claim pursuant to 42 U.S.C. § 1983;[5]

(IV) Assault and battery under state law;

(V) False imprisonment under state law;[6] and

(VI) Negligence under state law.

Amended Compl., Sept. 22, 2015, ECF No. 42. Defendants seek judgment on every claim.

The parties have filed statements of fact pursuant to the local rule. Unless indicated below, both sides agree on the following.

Defendants arrested Doyle on May 8, 2013, and charged her with criminal mischief in the third degree, a class E felony pursuant to N.Y. Penal Law § 145.05(2), and resisting arrest, a class A misdemeanor pursuant to N.Y. Penal Law § 205.30. In the morning of May 7, 2013, Doyle allegedly used a pocket knife to slice open the seat of a motorized chair belonging to

---

document created with a word processor, or a paper document, must be converted to Portable Document Format to be electronically filed with the court. Documents which exist only in paper form may be scanned into a portable document format (PDF) for electronic filing. Electronic documents must be converted to .PDF from a word processing program and must be text searchable. Do not print, scan and .PDF your document when it has been created in a word processing program." CM/ECF Administrative Procedures Guide ¶ 2(a)(v).

[4] Subsequently withdrawn.

[5] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[6] Subsequently withdrawn.

another resident of the Dayspring Apartments where she lived. The felony criminal mischief charge was subsequently reduced to a class A misdemeanor upon Corning Police Department Sergeant Jonathan D. McDivitt's ("Sgt. McDivitt") filing of a new accusatory instrument after learning that the damages did not exceed $250. Ex. F, Jul. 20, 2018, ECF No. 82-7. Sgt. McDivitt obtained depositions from the owner of the vandalized scooter, and an eyewitness who identified Doyle as the vandal.

The following day, Lieutenant Penrose J. Dyring ("Lt. Dyring"), a member of the City of Corning Police Department, located Doyle at a Walgreens pharmacy, and he and Sgt. McDivitt entered the store to question her. Doyle and Defendants differ in their accounts of what happened when the officers arrived at Walgreens to question Doyle. The video evidence submitted by Defendants shows that at the time the police entered the store, Doyle sat on a motorized scooter at the cashier's counter near the entrance. Sgt. McDivitt related that Doyle became confrontational and refused to answer his questions. Doyle then pulled her cell phone out of her pocket, which Lt. Drying grabbed. Doyle then told the cashier to call the State Police and began backing her power scooter away from the officers. Sgt. McDivitt grabbed Doyle's right arm to prevent her from moving the scooter, advised her she was under arrest, and ordered her to stand up and put her arms behind her back. Doyle did not do so, and, instead, put her left arm into her jacket pocket. Because the witness had informed Sgt. McDivitt that Doyle possessed a pocket knife, Sgt. McDivitt grabbed Doyle's left wrist and noted that she held an item in her hand, which appeared to him to be a digital recorder. Sgt. McDivitt described that Doyle dropped the recorder on the ground and as the officers were handcuffing her, she kicked the recorder towards the Walgreens' manager saying, "Save that as evidence for the State Police." The officers contend they used "minimal force" to handcuff her and

escort her to the police car. Def.s' Statement of Undisputed Material Facts ¶ 7, Jul. 20, 2018, ECF No. 82-30.

Doyle, however, maintains that she became fearful, asked Walgreens' employees to call the State Police, and was unable to meet the officer's demands "because it was physically impossible for her to do so at the time due to her physical disabilities." Pl.'s Fact Statement ¶ 5, Aug. 31, 2018, ECF No. 84-2. Doyle asserts in her statement of facts, ¶ 7, that "Defendants used excessive force when arresting [her]."

Doyle has discontinued her claims of false arrest (Count II of the Amended Complaint) and false imprisonment (Count V). Defendants maintain that the Court should dismiss the entire amended complaint, whereas Doyle argues that material issues of fact preclude summary judgment.

## STANDARDS OF LAW

### Summary Judgment

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,…demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and "the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a) (2015). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir. 1996) (citation omitted).

The burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury

verdict in its favor. *Id.* at 249. Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c)(1). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## ANALYSIS

Defendants make the following arguments in support of their motion for summary judgment:

(1) Probable cause defeats Doyle's malicious prosecution claim;

(2) Punitive damages are not available against the City of Corning;

(3) The Court should dismiss Doyle's claims against Defendants in their individual capacities;

(4) The Court should dismiss Doyle's *Monell* claims because she has failed to allege any custom or policy, *Monell* liability does not arise from a single incident, and the officers committed no constitutional violation during the arrest;

(5) Doyle has failed to comply with N.Y. Gen. Mun. Law § 50-i(1)(b);

(6) The doctrine of governmental immunity bars Doyle's state law claims;

(7) The Court must dismiss Doyle's state law negligence;

(8) The Court must dismiss Doyle's state law assault and battery;

(9) Lt. Dyring is entitled to qualified immunity; and

(10) Doyle's medical records do not show any causally related injury.

Def.s' Mem. of Law, Jul. 20, 2018, ECF No. 82-31.

*(1) Doyle's malicious prosecution claim*

Doyle conceded that the officers had probable cause to arrest her for criminal mischief. Thus, it is only with respect to the resisting arrest charge that she claims malicious prosecution. It was Lt. Dyring who filed the resisting arrest charge; therefore, Defendants contend Lt. Dyring is the only relevant defendant with respect to the malicious prosecution claim. Def.s' Mem. of Law 4. Doyle counters, that since Sgt. McDivitt was the witness who testified in support of the resisting arrest charge at trial, he is also liable for malicious prosecution. Answering Memoranda [sic] in Support of Pl's Response to Def.s' Motion for Summary Judgment ("Pl.'s Mem. of Law") 3, Aug. 31, 2018, ECF No. 91.

> "The elements of the tort of malicious prosecution are: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice" (*id.* at 457[7];....).... [T]he unique elements of malicious prosecution typically present a greater obstacle to recovery than the elements of false arrest; as we have said, "The law...places a heavy burden on malicious prosecution plaintiffs" (*Smith-Hunter*, 95 NY2d at 195...).

*De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 760 (2016). Doyle was acquitted of both charges at trial.

Generally, it is a prosecutor who initiates a criminal prosecution, but the Court of Appeals in *De Lourdes Torres* recognized that a person who supplies false information to the prosecutor, or insists on the charge being prosecuted, can be liable for malicious prosecution. Construing the facts in the light most favorable to Doyle, the Court will assume for this motion that both officers are potentially liable for malicious prosecution based on the resisting arrest charge.

---

[7] *Broughton v. State*, 37 N.Y.2d 451, 457 (1975).

In *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) the Court of Appeals discussed an additional element for a malicious prosecution claim under the Constitution and 42 U.S.C. § 1983: "[T]o be actionable under section 1983 there must be a post-arraignment seizure, the claim being grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures." At oral argument Defendants stressed that Doyle was released after arraignment, the resisting arrest was not the sole charge, and it was not disproportionate in seriousness to the criminal mischief charge. Consequently, they argue that Doyle suffered no post-arrest deprivation of liberty sufficient to constitute a Fourth Amendment seizure.

In a summary order, the Second Circuit reviewed this requirement under factual circumstances similar to those here and found no sufficient Fourth Amendment seizure:

> Since Coleman was released without bail after his arraignment, the only post-arraignment deprivation of liberty he suffered was the ongoing requirement of appearing in court (more than a dozen times over two years). That might be sufficient, *see Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215–16 (2d Cir. 2000), except that it is not solely attributable to the assault charges, which are the only remaining charges for which Coleman could have a malicious prosecution claim. Even if the assault charges had never been, Coleman still would have had the obligation to appear on account of the other criminal charges (which cannot support a malicious prosecution claim, because they were indisputably supported by probable cause) and the traffic code violations (which cannot support a malicious prosecution claim because they were terminated unfavorably to Coleman by ACD). It is Coleman's burden to show a post-arraignment deprivation of liberty that resulted from the prosecution that he alleges was unsupported by probable cause; he has not sustained it.

*Coleman v. City of N.Y.*, 688 F. App'x 56, 58 (2d Cir. 2017); *accord Thompson v. Clark*, No. 14-CV-7349, 2018 U.S. Dist. LEXIS 105225, at *12-13 (E.D.N.Y. June 11, 2018) ("If a plaintiff is required to appear or be held on other criminal charges supported by probable cause, and of equal or greater magnitude, a claim of malicious prosecution will not stand."). As with *Colemen*, Doyle was required to appear in court on the criminal mischief charge for which there is no lack of probable cause. At oral argument, Doyle maintained that the addition of the

malicious prosecution charge, for which she contends the police lacked probable cause, forced her to incur expenses and difficulties in finding a lawyer who would represent her on both charges. However, Doyle submitted no evidentiary proof of post-arrest deprivations sufficient to constitute a Fourth Amendment seizure on the resisting arrest charge.

*(2) Doyle's claims against Defendants in their individual capacities*

Doyle contends that her claims against Lt. Dyring and Sgt. McDivitt in both their individual and official capacities should go forward. However, Defendants argue that the Court should dismiss the official capacity claims against the two officers. "The Court agrees, since '[c]laims against individual defendants in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant.'" *Galloway v. Town of Greece*, 732 F. Supp. 2d 195, 214 (W.D.N.Y. 2010), *aff'd sub nom on other grounds Town of Greece v. Galloway*, 572 U.S. 565 (2014) (quoting *Zachary v. Clinton County, N.Y.*, No. 1:01CV1281 (FJS/DRH), 2003 U.S. Dist. LEXIS 26596, 2003 WL 24197685 at *2 (N.D.N.Y. Jan. 10,2003) (citation and internal quotations omitted), *aff'd*, 86 Fed. Appx. 451 (2d Cir. Jan. 21, 2004). Therefore, the Court dismisses the claims against Lt. Dyring and Sgt. McDivitt in their official capacities.

*(3) Doyle's Monell claims*

Defendants argue that the Court must dismiss Doyle's *Monell* claim (Count III) because: (1) she has failed to allege any custom or policy' (2) this is only a single incident which does not support a *Monell* claim; and (3) in any event, no underlying constitutional violation exists. Doyle counters that she has raised a material issue of fact precluding summary judgment: "[t]he right to be free from excessive force." Pl.'s Mem. of Law 8. She contends that the Corning Police Department's use of force policy, although constitutional, was unconstitutionally applied to her. Pl.'s Mem. of Law 9.

The Supreme Court's decision in *Graham v. Connor*, 490 U.S. 386 (1989), is instructive on the question of the use of force. After holding that the appropriate constitutional provision to examine the use of force in an arrest is the Fourth Amendment's "reasonable" standard, the Court wrote:

> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.… An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Graham*, 490 U.S. at 397 (citations omitted).

Corning Police Department General Order 20.1, as well as the police manual, prohibit the use of unnecessary force. Doyle relies on the holding in *Lanier v. Woodburn*, 518 F.3d 1147 (9th Cir. 2008), to support her argument that the constitutional use of force policy becomes unconstitutional when applied to her. In *Lanier*, a woman who applied to be a page at a public library refused to submit to a mandatory drug screening test for the position. She sued the municipality contending that a preemployment drug screening test was unconstitutional under the Fourth Amendment and the Oregon Constitution. The Ninth Circuit held that the municipality's policy of requiring preemployment drug screening "effects a search within the meaning of the Fourth Amendment." *Id*. at 1149–50. Citing to *United States v. Salerno*, 481 U.S. 739 (1987), the Ninth Circuit held that the plaintiff needed to show that "'no set of circumstances exists under which the [policy] would be valid.'" *Id*. at 1150 (quoting *Salerno*, 481 U.S. at 745). The Ninth Circuit concluded that although the municipality's policy of suspicionless drug screening was not facially unconstitutional, it was unconstitutional when applied to the plaintiff. *Id*. at 1152.

Turning to the case at hand, Doyle quotes from the police manual which allows the use of physical force "only to the extent necessary to effect an arrest or for self-defense, or in defense of another." Pl.'s Mem. of Law 9. Doyle's argument here is essentially that the police could not use physical force at all during Doyle's arrest because she was seated in a scooter. The Court is persuaded by Defendants' argument that under no circumstance would the municipality's use of force policy be unconstitutional since it calls for the *least* force necessary under the circumstances. Moreover, Doyle's amended complaint does not assert a claim of excessive force under the Fourth Amendment.

Therefore, the only claim the Court finds that can arguably go forward is Doyle's *Monell* claim against the City of Corning for failure to train the officers in the proper application of force when arresting a disabled person, such as Doyle.

> "However, such a failure to act, train, or supervise can constitute a municipal custom 'only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.'" *Triano*, 895 F. Supp. 2d at 534 (citation omitted). The 'deliberate indifference' test 'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Brown*, 2017 U.S. Dist. LEXIS 58283, 2017 WL 1390678 at *13 (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).

*Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 500 (N.D.N.Y. 2017). With only one example of the use of force allegedly causing injury to a disabled citizen, though, the Court cannot conclude that "the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Id*. Therefore, the Court grants the application for judgment on this claim.

## CONCLUSION

Doyle has withdrawn the following causes of action:

(II) False arrest pursuant to 42 U.S.C. § 1983; and

(V) False imprisonment under state law.

For the reasons stated above, the Court grants Defendants' motion for summary judgment on the following causes of action in the amended complaint:

(I) Malicious prosecution pursuant to 42 U.S.C. § 1983; and

(III) A *Monell* claim pursuant to 42 U.S.C. § 1983.

Because the Court's decision dismisses all the Federal claims in this action, the Court declines to exercise jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) of this matter with regard to state law claims. Accordingly, this case is remanded to the New York State Supreme Court in the County of Steuben pursuant to § 1447(c), and the Clerk is directed to mail a certified copy of this Decision and Order to the Clerk of the New York State Supreme Court in Steuben County.

IT IS SO ORDERED

DATED:     January 29, 2019
           Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge